FILED

FEB 0 6 2012

United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ]  Case No. 01-53251-ASW |
| JACQUELINE C. MELCHER, | ]  Chapter 7 |
| Debtor. | ] |

**MEMORANDUM DECISION DENYING (1) DEBTOR'S MOTION FOR
RECONSIDERATION OF THE ORDER APPROVING THE COMPROMISE
WITH THE PROBATE ESTATE OF TERRENCE P. MELCHER
(2) DEBTOR'S MOTION TO COMPEL; AND (3) DEBTOR'S
MOTION FOR AN ORDER TO SHOW CAUSE RE CONTEMPT**

Before the Court are two motions and an Order to Show Cause re Contempt filed by Jacqueline C. Melcher ("Debtor"). On September 23, 2011, Debtor filed a motion to compel ("Motion to Compel") the Chapter 7 Trustee John Richardson ("Trustee") to turn over to Debtor certain information. On October 13, 2011, Debtor filed a motion to amend and reconsider ("Motion to Reconsider") this Court's memorandum decision ("Memorandum Decision") entered on October 3, 2011 granting Trustee's Motion for Order Authorizing Compromise ("Compromise Motion") with the Probate Estate of Terrence P. Melcher ("Probate Estate"). On October 20, 2011, Debtor filed an Ex Parte Order to Show Cause for Contempt ("Contempt Motion") requesting turnover of the same information as

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1   in the Motion to Compel as well as additional other information.

2   Trustee opposes all three matters.  A hearing was held on all three

3   matters on November 15, 2011, and all matters were taken under

4   submission after the filing of additional papers by the parties.

5        Trustee is represented by Charles P. Maher, Esq. of Luce,

6   Forward, Hamilton & Scripps LLP.  The Probate Estate is represented

7   by Lance N. Jurich, Esq. of Loeb & Loeb LLP.  Debtor is appearing

8   in propria persona.

9        This Memorandum Decision constitutes the Court's findings of

10  fact and conclusions of law, pursuant to Rule 7052 of the Federal

11  Rules of Bankruptcy Procedure.

12

13                                I.

14                FACTS AND PROCEDURAL BACKGROUND

15       The Court hereby incorporates the facts as set forth in the

16  Memorandum Decision at 2:11 - 7:28 as well as the terms defined in

17  the entire Memorandum Decision.

18  **A. Motion to Compel and Contempt Motion**

19       On September 23, 2011, Debtor filed the Motion to Compel

20  seeking to have this Court compel Trustee to turn over several

21  documents relating to the compromise with the Probate Estate.  The

22  Motion to Compel was filed while the Compromise Motion was under

23  submission and 10 days before the Court issued the Memorandum

24  Decision granting the Compromise Motion.  In the Motion to Compel,

25  Debtor asked for: (1) Debtor's trial exhibits from the Dissolution

26  Trial; (2) proof of Terrence Melcher's contributions to the

27  Stonewall Beach Property; (3) copies of Terrence Melcher's tax

28  returns; and (4) Trustee's analysis of the value of the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Entertainment Interests.  The Motion to Compel was set for hearing on October 21, 2011.

On October 20, 2011, Trustee late-filed an opposition to the Motion to Compel.  Also on October 20, 2011, Debtor filed an Ex Parte Order to Show Cause for Contempt ("Contempt Motion").  In the Contempt Motion, Debtor asserted that Debtor requested turnover of the following in the Motion to Compel: (1) Debtor's trial exhibits from the Dissolution Trial; (2) copies of Terrence Melcher's tax returns in Trustee's possession; (3) Trustee's analysis of the value of the Entertainment Interests; (4) Trustee's analysis of the 2120 Action; (5) proof of Terrence Melcher's contributions to the Stonewall Beach Property; (6) information received by Trustee from the subpoena issued to the Walt Disney Company ("Disney") allegedly showing thousands of licensing agreements issued by Disney for the musical copyright of the song "Kokomo;" and (7) an independent audit of the Entertainment Interests.

At the October 21, 2011 hearing, the Court continued the Motion to Compel to November 15, 2011 and permitted Debtor an opportunity to reply to Trustee's late-filed opposition.  On November 7, 2011, Trustee filed an opposition to the Contempt Motion.  Also on November 7, 2011, Debtor filed a reply to the Motion to Compel.  On November 14, 2011, Debtor filed an amendment to Debtor's reply to the Motion to Compel.  On November 15, 2011, Debtor filed a response to Trustee's opposition to the Contempt Motion.  The Motion to Compel and Contempt Motion were taken under submission at the November 15, 2011 hearing.

**B. Motion to Reconsider**

On October 3, 2011, the Court filed the Memorandum Decision granting the Compromise Motion. The Memorandum Decision was entered on October 4, 2011. On October 13, 2011, Debtor filed the Motion to Reconsider. In the Motion to Reconsider, Debtor asked for certain corrections to the facts as set forth in the Memorandum Decision as well as reconsideration of the Memorandum Decision. Debtor filed a corrected and supplemental Motion to Reconsider on October 14, 2011. Also on October 14, 2011, Trustee set the Motion to Reconsider for hearing on November 15, 2011.

On October 24, 2011, Trustee filed an opposition to the Motion to Reconsider. On October 25, 2011, the Court entered an order authorizing the compromise between Trustee and the Probate Estate ("Order").

On November 4, 2011, Debtor filed a request for clarification of the Order and asked that if the Order is not part of the Motion to Reconsider, the Court reconsider the Order. On both November 7 and 10, 2011, Debtor filed two separate documents entitled "Response to Memorandum Dated October 4, 2011." The Court took the Motion to Reconsider under submission at the November 15, 2011 hearing.

After the three matters were submitted, Debtor filed partial exhibits from the Dissolution Trial as well as the declaration of Beach Boy member Al Jardine. Debtor subsequently asked for permission to file additional papers relating to the Motion to Reconsider. The Court granted Debtor such additional time with Debtor's papers to be filed by December 9, 2011 and Trustee's response due by December 16, 2011.

On December 9, 2011, Debtor filed additions and clarifications to Debtor's Motion to Reconsider. On December 13, 2011, Debtor filed the complete deposition of Terrence Melcher. On December 15, 2011, Trustee filed a response to Debtor's additional pleadings. On December 16 and 19, 2011, Debtor filed further papers related to the Motion to Reconsider. On December 19, 2011, Trustee has asked that the additional pleadings filed by Debtor after December 9, 2011 relating to the Motion to Reconsider be stricken. On December 22, 2011, Debtor filed a response opposing Trustee's request and asking that Debtor's documents not be stricken.

## II.

### ANALYSIS

Because the analysis of the Motion to Reconsider impacts the Motion to Compel and the Contempt Motion, the Court will address the Motion to Reconsider first.

**A. Motion to Reconsider**

Federal Rule of Bankruptcy Procedure 9024, which governs relief from a judgment or order, provides that a motion for relief from an order is governed by Federal Rule of Civil Procedure 60 ("Rule 60(b)"). Rule 60(b) provides that a court may relieve a party from an order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer

1   equitable; or (6) any other reason that justifies
2   relief.

3   A motion for reconsideration is appropriate only where: (1) the

4   court is presented with newly discovered evidence; (2) the court

5   committed clear error or the initial decision was manifestly

6   unjust; or (3) there is an intervening change in controlling law.

7   School Dist. No. 1J, Multnomah County, Oregon v. Acands Inc.,

8   5 F.3d 1255, 1263 (9th Cir. 1993).

9          Debtor moves both to amend the Memorandum Decision to address

10  certain alleged factual inaccuracies as well as for this Court to

11  reconsider granting Trustee's Compromise Motion.  The Court has

12  reviewed the numerous papers filed by Debtor relating to the Motion

13  to Reconsider.  The Court finds no basis on which either to amend

14  the Memorandum Decision or to reconsider the ruling in the

15  Memorandum Decision.  For the most part, Debtor's arguments either

16  were raised in opposition to the Compromise Motion, raise issues

17  that were or should have been resolved at in the Dissolution Trial,

18  or are irrelevant to the outcome of the Memorandum Decision.

19  **(1) Corrections to the Memorandum Decision**

20         Debtor first seeks to correct the Memorandum Decision at

21  2:14.  According to Debtor, the separation between Debtor and

22  Terrence Melcher began in mid-1997, not in February or March 1997.

23  Debtor contends that this fact is important because Terrence

24  Melcher allegedly deferred income until after the separation date.

25  However, the actual date of separation is not relevant to the

26  Court's determination as to whether the compromise between Trustee

27  and the Probate Estate meets the applicable standards under Federal

28  Rule of Bankruptcy Procedure 9019, that the settlement was

1  negotiated in good faith and is fair and equitable.   In re A & C

2  Properties, 784 F.2d 1377, 1381 (9th Cir. 1986).

3          "Under res judicata, a final judgment on the
           merits of an action precludes the parties or their
4          privies from relitigating issues that were or could
           have been raised in that action."  Allen v. McCurry,
5          449 U.S. 90, 93, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
           "Claim preclusion is a broad doctrine that bars
6          bringing claims that were previously litigated as well
           as some claims that were never before adjudicated."
7          Clements v. Airport Auth. of Washoe County, 69 F.3d
           321, 327 (9th Cir. 1995).
8

9  Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007).  Here, any

10 claim for deferred income should have been resolved at the

11 Dissolution Trial and, if not resolved there, Debtor is precluded

12 from raising that claim in this bankruptcy case.  There is no need

13 for this Court to amend the Memorandum Decision.

14      Debtor next seeks to correct the Memorandum Decision at

15 2:17-18.  According to Debtor, the multi-day Dissolution Trial

16 consisted of several brief appearances, sometimes only an hour or

17 two a day.  The fact that there are certain days in which the court

18 proceedings were shorter than others is irrelevant to the outcome

19 of the Memorandum Decision.  Such facts do not alter the fact that

20 the Dissolution Trial occurred over multiple days, as stated in the

21 Memorandum Decision.  There is no need for this Court to amend the

22 Memorandum Decision.

23      Debtor further seeks to correct the Memorandum Decision at

24 2:18-19.  According to Debtor, Debtor was forced to represent

25 herself in the Dissolution Trial due to the withdrawal of her

26 counsel on the eve of trial and Debtor did not choose to represent

27 herself.  This clarification does not alter the fact that Debtor

28 was in propria persona at the Dissolution Trial -- as accurately

1  stated in the Memorandum Decision -- and is irrelevant to the
2  outcome of the Memorandum Decision.  There is no need for this
3  Court to amend the Memorandum Decision.

4  Debtor further seeks to correct the Memorandum Decision at
5  2:25-28.  According to Debtor, Debtor's bankruptcy case was **not**
6  filed primarily to prevent the sale of the Stonewall Beach
7  Property.  Rather, Debtor was forced to file for bankruptcy because
8  Terrence Melcher: (a) refused to turn over 50% of the Entertainment
9  Interests; (b) cut off child support; and (c) allegedly colluded
10 with George Soros to arrange an $8 million indemnity from the sale
11 of the Stonewall Beach Property to George Soros that would have
12 resulted in a $1.4 to $1.5 million deficit from the sale.  Again,
13 the full reasons for Debtor filing Debtor's chapter 11 bankruptcy
14 case are irrelevant to the outcome of the Memorandum Decision.
15 There is no need for this Court to amend the Memorandum Decision.

16 Debtor next seeks to correct the Memorandum Decision at
17 4:4-7.  According to Debtor, Debtor did not fail to comply with the
18 provisions of the Dissolution Judgment.  Rather, Debtor took in
19 boarders and filed an appeal of the Dissolution Judgment -- issued
20 10 months after the Dissolution Trial -- and Debtor had a right to
21 appeal the Dissolution Judgment.  Debtor objects to being put in
22 the same category as Terrence Melcher who Debtor asserts committed
23 perjury and fraud in the Dissolution Trial.  Terrence Melcher
24 ignored state court orders to pay child support; provide an
25 accounting; pay monthly family bills; and pay 50% of the
26 Entertainment Interests to Debtor.

27 As set forth in the Memorandum Decision, both Terrence
28 Melcher and Debtor failed to perform aspects of the Dissolution

1 Judgment. This is an accurate statement. Contrary to Debtor's
2 assertion, the Court is not putting Debtor in the same category as
3 Terrence Melcher. Rather, the Court is simply stating the facts.
4 The Court finds no basis for this Court to amend the Memorandum
5 Decision as requested by Debtor.

6 Debtor further seeks to correct the Memorandum Decision at
7 4:15. According to Debtor, Debtor did not pay Terrence Melcher's
8 1996 taxes. Debtor paid what was requested of her by the Internal
9 Revenue Service and the State of California. Debtor was declared
10 an innocent spouse. Debtor requested other reimbursements from the
11 Probate Estate for Terrence Melcher's loan on computer equipment
12 for which Debtor was not to be responsible according to a written
13 statement signed by Terrence Melcher. Debtor asserts that the
14 equipment was either sold or given away by Terrence Melcher.

15 The portion of the Memorandum Decision to which Debtor
16 objects simply sets forth the claims both parties have against the
17 other that are the subject of the proposed compromise. To the
18 extent Debtor seeks to augment the Dissolution Judgment with facts
19 that could or should have been raised as part of the Dissolution
20 Trial, namely Terrence Melcher's alleged responsibility to Debtor
21 for money borrowed for equipment, Debtor is precluded from raising
22 that claim in this bankruptcy case. There is no need for this
23 Court to amend the Memorandum Decision to include allegations
24 raised by Debtor that Debtor is precluded from adjudicating in this
25 proceeding.

26 Debtor next seeks to correct the Memorandum Decision at 4:25.
27 According to Debtor, the $75,000 for personal property allegedly
28 not turned over to Terrence Melcher consists of gold records that

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1   are not actually gold and were given to Debtor and Terrence

2   Melcher's son Ryan.  Debtor raised this same assertion as part of

3   Debtor's objection to the proposed compromise.  Such an assertion

4   does not alter the fact that the Probate Estate asserts such a

5   claim against the bankruptcy estate.  The Memorandum Decision

6   accurately states the Probate Estate's asserted claim and there is

7   no need for this Court to amend the Memorandum Decision.

8        Debtor further seeks to correct the Memorandum Decision at

9   4:28 - 5:1.  According to Debtor, Debtor did not have exclusive use

10  of the Stonewall Beach Property.  Rather Debtor had to rent the

11  Stonewall Beach Property most of the time to support the debt

12  service on that property when Terrence Melcher abandoned that debt

13  service.  However, it is accurate that neither Terrence Melcher nor

14  the Probate Estate had access to the Stonewall Beach Property after

15  the Dissolution Judgment, if not earlier.  Moreover, such an

16  assertion does not alter the fact that the Probate Estate asserts

17  such a claim against the bankruptcy estate.  The Memorandum

18  Decision accurately states the Probate Estate's asserted claim and

19  there is no need for this Court to amend the Memorandum Decision.

20       Finally, Debtor seeks to correct the Memorandum Decision at

21  5:3-6.  According to Debtor, if the Stonewall Beach Property had

22  sold in 2001 for $12 million, the $8 million indemnity would have

23  caused a $1.4 to $1.5 million deficit.  Again, the Memorandum

24  Decision is only setting forth the claims of the Probate Estate

25  against the bankruptcy estate.  The Memorandum Decision accurately

26  states the Probate Estate's asserted claim and there is no need for

27  this Court to amend the Memorandum Decision.

28

**(2) Matters Allegedly Left Out of the Memorandum Decision**

1   Debtor asserts that the Court omitted from the facts in the
2   Memorandum Decision that the state court issued an order on
3   August 14, 2000 requiring Terrence Melcher to direct that 50% of
4   the Entertainment Interests be paid directly to Debtor and that
5   Terrence Melcher ignored this order.  The fact that Terrence
6   Melcher failed to pay 50% of the Entertainment Interests to Debtor
7   pursuant to the Dissolution Judgment is part of the Memorandum
8   Decision.  The fact that the state court ordered that relief prior
9   to the Dissolution Judgment is irrelevant to the outcome of the
10  Memorandum Decision.  There is no need for this Court to amend the
11  Memorandum Decision.

12  Debtor next asserts that Terrence Melcher's only claim
13  against Debtor's bankruptcy estate in 2001 was approximately
14  $168,000.  What claim Terrence Melcher had against Debtor's
15  bankruptcy estate in 2001 is irrelevant to the outcome of the
16  Memorandum Decision because the determination as to whether the
17  settlement is fair, reasonable and equitable is based on the claim
18  which the Probate Estate currently has against the bankruptcy
19  estate, not the claim as filed in 2001.  There is no need for this
20  Court to amend the Memorandum Decision.

21  Debtor further asserts that the Adequate Protection Order was
22  to provide adequate protection for any diminution of value to the
23  Stonewall Beach Property and was not to be used after the passing
24  of Terrence Melcher by the Probate Estate to devalue the Stonewall
25  Beach Property through alleged collusion with Edwin Cohen who
26  secretly sold the adjacent property to George Soros.  Debtor's
27  position is that the Adequate Protection Order expired when

1 Debtor's plan of reorganization was appealed by the Probate Estate
2 and then remanded to the bankruptcy court.

3 While Debtor did not raise these specific arguments
4 previously, Debtor did oppose the proposed compromise on the basis
5 that the Probate Estate devalued the Stonewall Beach Property
6 through alleged collusion with Edwin Cohen and George Soros. See
7 docket number 2984 (filed on June 17, 2011). This Court already
8 took into consideration Debtor's position regarding the application
9 of the Adequate Protection Order in the Court's original
10 determination as explained in the Memorandum Decision. There is no
11 need for this Court to amend the Memorandum Decision.

12 Debtor also seeks to have added to the Memorandum Decision
13 the fact that Debtor needed to borrow against the Moshup Trail
14 Property to support the debt on the Stonewall Beach Property.
15 However, Debtor previously raised this issue in opposition to the
16 Compromise Motion and the court previously considered and ruled
17 upon this issue in the Memorandum Decision. See Memorandum
18 Decision at 17:3-18. There is no need for this Court to amend or
19 reconsider that section of the Memorandum Decision.

20 Finally, Debtor asserts that the amount of the net rents for
21 the Stonewall Beach Property included in the proposed compromise is
22 incorrect because the net rents include rents for 1996 when Debtor
23 and Terrence Melcher were still living together. Assuming Terrence
24 Melcher lived with Debtor in 1996, the expenses for the Stonewall
25 Beach Property ($125,527 plus mortgage payments of $14,147)
26 exceeded the income ($120,000), so there were no net rents for
27 1996. Thus, including both the 1996 rental income and the
28 offsetting expenses as part of the total net rents for the

Stonewall Beach Property only benefits the bankruptcy estate because the overall net rents are less than if the 1996 rents and expenses were not included.

### (3) Reconsideration of the Memorandum Decision

In addition to the proposed amendments and corrections, Debtor also objects to some of this Court's determinations made with respect to approval of the Compromise Motion. In large part, Debtor objects to the valuations provided and the alleged failure of the proposed compromise to address various issues raised by Debtor in Debtor's objections to the Compromise Motion. The Court finds that in many respects, Debtor is rearguing points previously raised in Debtor's original objections to the Compromise Motion. To the extent Debtor already raised these issues in Debtor's opposition to the Compromise Motion, this Court has already considered those objections. Moreover, Debtor raises issues that could or should have been addressed in the Dissolution Trial since those issues were involved in the distribution of property between Debtor and Terrence Melcher. To the extent these issues were, or could have been, raised during the Dissolution Trial, those issues cannot be re-litigated in the context of the Compromise Motion. Holcombe, 477 F.3d at 1097. The following issues fall into both of these categories:

(1) The seven year management contract with Andy Vargas is not part of the compromise. Debtor previously raised this argument in pleadings filed as docket numbers 2391 (filed on January 27, 2010); 2432 (filed on March 5, 2010); and 2791 (filed on November 23, 2010).

(2) The award to Debtor of certain boats and vehicles under the Dissolution Judgment is not part of the compromise. Debtor previously raised this argument in pleadings filed as docket numbers 2791 (filed on November 23, 2010); 2793 (filed on November 24, 2010); and 2955 (filed on May 27, 2011).

(3) The two New York Life Insurance policies which Debtor asserts were paid with community property and were not addressed in the Dissolution Judgment. Debtor previously raised this argument in pleadings filed as docket numbers 2584 (filed on July 21, 2010); 2782 (filed on November 16, 2010); 2791 (filed on November 23, 2010); 2793 (filed on November 24, 2010); and 2955 (filed on May 27, 2011).

(4) The amount of Terrence Melcher's income during marriage as determined in the Dissolution Judgment is incorrect. Debtor previously raised this argument in pleadings filed as docket numbers 2584 (filed on July 21, 2010) and 2955 (filed on May 27, 2011).

(5) Terrence Melcher allegedly deferred income until after the separation. Debtor previously raised this argument in a pleading filed as docket number 2948 (filed on May 23, 2011).

(6) Debtor asserts the amount for Terrence Melcher's share of unimproved lots in Rancho Cucamonga as determined in the Dissolution Judgment is incorrect. Debtor previously raised this argument in pleadings filed as docket numbers 2766 (filed on November 5, 2010); 2791 (filed on November 23, 2010); 2936 (filed on May 10, 2011); 2955 (filed on May 27, 2011); and 2974 (filed on June 14, 2011).

The following are points previously raised in Debtor's original objections to the Compromise Motion which this Court has already considered in issuing the Memorandum Decision:

(1) 22 songs comprise the Entertainment Interests, not 16 songs as determined by the state court. Debtor previously raised this argument in pleadings filed as docket numbers 2432 (filed on March 5, 2010); 2529 (filed on June 2, 2010); 2955 (filed on May 27, 2011); and 2974 (filed on June 14, 2011).

(2) The declaration of Terrence Melcher's widow, Terese, does not include all royalties received by Terese from Universal Music Group. Debtor previously raised this argument in a pleading filed as docket number 2958 (filed on June 2, 2011) and this Court specifically found that "[c]ontrary to Debtor's assertions, Terese's declaration does include the royalties for which Debtor has filed documents from UMG." Memorandum Decision at 13:1-3.

(3) The $240,000 value for the future Entertainment Interests is too low and includes only royalties for "air play" and does not include the 40% interest on film royalties. Debtor previously raised this argument in pleadings filed as docket numbers 2584 (filed on July 21, 2010); 2755 (filed on October 21, 2010); 2791 (filed on November 23, 2010); 2955 (filed on May 27, 2010); 2958 (filed on June 2, 2011); and 2995 (filed on June 24, 2011).

(4) The Probate Estate was allegedly ordered by this Court to match what Debtor had contributed to the Stonewall Beach Property and the compromise does not include any offsets. Debtor previously raised this argument in pleadings filed as docket numbers 2936 (filed on May 10, 2011); 2955 (filed on May 27, 2011); 2960 (filed on June 3, 2011); and 2984 (filed on June 17, 2011).

(5) The Probate Estate should not be credited with one-half of the net rents from the Stonewall Beach Property as part of the compromise. Debtor previously raised this argument in pleadings filed as docket numbers 2399 (filed on February 2, 2010); 2424 (filed on February 19, 2010); 2529 (filed on June 2, 2010); 2755 (filed on October 21, 2010); 2766 (filed on November 5, 2010); and 2955 (filed on May 27, 2011).

(6) The Court should only award net rents on the Stonewall Beach Property if the Probate Estate has clean hands, which it does not because Terrence Melcher only contributed $275,130 into the Stonewall Beach Property and he worked to the detriment of the Stonewall Beach Property by colluding with Edwin Cohen and George Soros to damage Debtor and Debtor's bankruptcy estate both before and after Debtor's bankruptcy filing. Debtor previously raised similar arguments in pleadings filed as docket numbers 2424 (filed on February 19, 2010) and 2755 (filed on October 21, 2010).

(7) Debtor should receive income credit for renting the Stonewall Beach Property. Debtor previously raised this argument in pleadings filed as docket numbers 2399 (filed on February 2, 2010); 2424 (filed on February 19, 2010); 2766 (filed on November 5, 2010); and 2955 (filed on May 27, 2011).

(8) The $198,575 value of the pre-petition claim for the Probate Estate is incorrect. Debtor previously raised this argument in a pleading filed as docket number 2399 (filed on February 2, 2010).

(9) Debtor requests copies of Terrence Melcher's personal tax returns as well as the corporate tax returns for three corporations in which Terrence Melcher held an interest. Debtor previously

raised this argument in pleadings filed as docket numbers 2782
(filed on November 16, 2010); 2791 (filed on November 23, 2010);
and 2955 (filed on May 27, 2011).

(10) George Soros, Edwin Cohen and Terrence Melcher conspired
to take Debtor's deeded easement to the Stonewall Beach Property.
Debtor previously raised this argument in pleadings filed as docket
numbers 2424 (filed on February 19, 2010); 2755 (filed on
October 21, 2010); 2766 (filed on November 5, 2010); and 2782
(filed on November 16, 2010).

(11) The $282,500 value for the Family Residence used in the
compromise is incorrect.  Debtor previously raised this argument in
pleadings filed as docket numbers 2766 (filed on November 5, 2011)
and 2936 (filed on May 10, 2011).

(12) Terrence Melcher failed to pay the bills for the
Stonewall Beach Property as well as the family expenses after the
separation in mid-1997.  Debtor previously raised this argument in
a pleading filed as docket number 2791 (filed on November 23,
2010).
To the extent Debtor already raised these issues in Debtor's
opposition to the Compromise Motion, this Court has already
considered those arguments.  These issues are not a basis for this
Court to reconsider the Memorandum Decision or Order.

Debtor asserts that Debtor is providing "newly discovered"
evidence as a basis for the Motion to Reconsider, specifically, the
declarations of Al Jardine and Judy Ruby.  However, the
declarations do not meet the legal criteria for "newly discovered"
evidence and are not a basis upon which this Court should

reconsider the Memorandum Decision or Order.  The Ninth Circuit has held:

> Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case."  <u>Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.</u>, 833 F.2d 208, 211 (9th Cir. 1987).

<u>Feature Realty, Inc. V. City of Spokane</u>, 331 F.3d 1082, 1093 (9th Cir. 2003).

On November 21, 2011, Debtor filed a signed declaration of Al Jardine, one of the members of the Beach Boys, in support of Debtor's assertion that the future Entertainment Interests are worth more than $240,000.  However, Debtor has not shown that Mr. Jardine's declaration could not have been obtained, with reasonable diligence, as part of the numerous pleadings filed by Debtor in opposition to the Compromise Motion filed between January 2010 and June 2011 or that Debtor exercised due diligence to discover this evidence.  Moreover, the declaration of Mr. Jardine does not state a value for the future Entertainment Interests and does not contradict that $240,000 for those interest is a reasonable compromise.

On December 16, 2011, Debtor filed a signed declaration of Judy Ruby, who was employed by Doris Day -- Debtor's ex-mother-in-law -- as well as two corporations in which Terrence Melcher held an interest.  Ms. Ruby handled Terrence Melcher's personal affairs and maintained Terrence Melcher's personal financial accounting ledgers.  Ms. Ruby's declaration is filed in support of Debtor's

1  assertion that Debtor notified Ms. Ruby that certain accounting

2  ledgers forwarded by Ms. Ruby during the dissolution proceeding

3  between Debtor and Terrence Melcher were missing and Ms. Ruby

4  informed Debtor that there were no missing ledgers.

5      To the extent that there were missing ledgers during the

6  dissolution proceedings, the effect of any such missing ledgers

7  should have been addressed at the Dissolution Trial and, to the

8  extent these issues were not raised during the Dissolution Trial,

9  those issues cannot be re-litigated in the context of the

10 Compromise Motion.  Holcombe, 477 F.3d at 1097.  Moreover, Debtor

11 has not shown that Ms Ruby's declaration could not have been

12 obtained, with reasonable diligence, as part of the numerous

13 pleadings filed by Debtor in opposition to the Compromise Motion

14 filed between January 2010 and June 2011 or that Debtor exercised

15 due diligence to discover this evidence.

16     Debtor also asserts that the Memorandum Decision and Order

17 should be reconsidered under Rule 60(b)(3) due to the fraud,

18 misrepresentation or misconduct by an opposing party.  Under Ninth

19 Circuit law:

20     "To prevail, the moving party must prove by clear and
       convincing evidence that the verdict was obtained
21     through fraud, misrepresentation, or other misconduct
       and the conduct complained of prevented the losing
22     party from fully and fairly presenting the defense."
       De Saracho v. Custom Food Machinery, Inc., 206 F.3d
23     874, 880 (9th Cir. 2000).  "Federal Rule of Civil
       Procedure 60(b)(3) require[s] that fraud ... not be
24     discoverable by due diligence before or during the
       proceedings."  Pac. & Arctic Ry. and Navigation Co. v.
25     United Transp. Union, 952 F.2d 1144, 1148 (9th Cir.
       1991).

26

27 Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004).

28 The Court finds that Debtor has not shown by **clear and convincing**

1 **evidence** that approval of the compromise was obtained through

2 fraud, misrepresentation or misconduct by Trustee or the Probate

3 Estate. Moreover, even if there were such alleged fraud,

4 misrepresentation or other misconduct, Debtor has not met Debtor's

5 burden that any such alleged fraud, misrepresentation or other

6 misconduct prevented Debtor from fully and fairly opposing the

7 Compromise Motion. Debtor's motion for reconsideration under

8 Rule 60(b)(3) is denied.

9     Finally, Debtor raises two new arguments that should have

10 been raised in the numerous pleadings filed by Debtor in opposition

11 to the Compromise Motion. Specifically, Debtor wants interest for

12 the illegal $8 million indemnity agreement and Debtor objects to

13 the Probate Estate receiving any interest under the proposed

14 compromise. As the Ninth Circuit has explained: "A motion for

15 reconsideration 'may not be used to raise arguments or present

16 evidence for the first time when they could reasonably have been

17 raised earlier in the litigation.' <u>Kona Enters., Inc. v. Estate of</u>

18 <u>Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000)." <u>Marlyn Nutraceuticals,</u>

19 <u>Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 880 (9th Cir. 2009).

20 Because these two arguments could reasonably have been raised in

21 Debtor's pleadings opposing the Compromise Motion, Debtor's request

22 to reconsider the Memorandum Decision and Order on these grounds is

23 denied.

24     **B. Motion to Compel**

25     Debtor provides no legal authority in support of Debtor's

26 Motion to Compel and the Court knows of no such authority.

27 Moreover, the information Debtor seeks to compel Trustee to turn

28 over to Debtor relates to Debtor's opposition to the Compromise

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Motion. The Court has already ruled on the Compromise Motion in the Memorandum Decision and has denied Debtor's Motion to Reconsider that Memorandum Decision in this memorandum decision. Thus, there is no basis on which to grant Debtor's Motion to Compel.

There are additional reasons to deny Debtor's Motion to Compel. Regarding Debtor's trial exhibits from the Dissolution Trial, pursuant to an order entered on September 20, 2010, this Court authorized Trustee to release to Debtor documents which Trustee obtained in early 2009 from Debtor's most recent counsel subject to Debtor making arrangements to retrieve the records at Debtor's expense. Debtor has not made such arrangements. Accordingly, there is no basis upon which to compel Trustee to turn these documents over to Debtor. Debtor can claim those documents if and when Debtor complies with this Court's prior conditions regarding collection of those documents.

As for Debtor's request for copies of Terrence Melcher's tax returns in Trustee's possession, Trustee has already stated that Trustee obtained those documents pursuant to a confidentiality agreement and has returned those documents to the Probate Estate. Thus, Trustee has no such returns in Trustee's possession. Because Trustee has no such documents in Trustee's possession, there is nothing to compel.

Debtor further requests Trustee's analysis of the value of both the Entertainment Interests as well as the 2120 Action. To the extent that Debtor seeks the analysis by Trustee's counsel, that analysis is covered by the work product privilege and the

1  Court will not require such information to be turned over to
2  Debtor.

3      Debtor also requests information regarding proof of Terrence
4  Melcher's contributions to the Stonewall Beach Property.
5  Allocation of separate and community property interests in the
6  Stonewall Beach Property were part of the Dissolution Trial.  Any
7  contribution of Terrence Melcher to that property could reasonably
8  -- and should -- have been included in those proceedings.  Any
9  proof of Terrence Melcher's contributions to the Stonewall Beach
10  Property is irrelevant to this proceeding, as that issue cannot be
11  re-litigated in the context of the Compromise Motion.  Holcombe,
12  477 F.3d at 1097.

13      Debtor requests information received by Trustee from the
14  subpoena issued to Disney allegedly showing thousands of licensing
15  agreements issued by Disney for the musical copyright of the song
16  "Kokomo."  These are licenses issued by Disney since "Kokomo" was
17  written in the 1980s according to an email from Disney attached to
18  Debtor's papers.  As explained earlier, this information relates to
19  Debtor's opposition to the Compromise Motion upon which the Court
20  has already ruled in the Memorandum Decision and subsequently
21  denied Debtor's Motion to Reconsider, so there is no reason to
22  grant Debtor's Motion to Compel this information.

23      Finally, Debtor seeks to compel an independent audit of the
24  Entertainment Interests.  Debtor previously raised this issue in
25  pleadings filed in opposition to the Compromise Motion.  The Court
26  considered Debtor's objection in ruling on the Compromise Motion.
27  The Court determined that no independent audit was required and the
28  Court will not order such an audit at this time.

## C. Contempt Motion

Turning to the Contempt Motion, the Ninth Circuit has held:

> The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). In order to hold Trustee in contempt, Trustee must have violated a specific court order. The Trustee has not refused to comply with any such order. Thus, there is no basis upon which to grant the Contempt Motion.

## D. Request to Strike

> Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). This is "because of the limited importance of pleadings in federal practice and because [a motion to strike] is usually used as a delaying tactic." RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).
>
> Courts will not grant motions to strike unless "convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Id. When ruling on a motion to strike, this Court "must view the pleading under attack in the light most favorable to the pleader." Id. For a motion to strike to be granted, the grounds for the motion must appear either on the face of the complaint or from matters of which the Court may take judicial notice. See SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

In re New Century, 588 F. Supp. 2d 1206, 1219-20 (C.D. Cal. 2008).

1    While the Court does not condone Debtor's tendency to file

2  documents after deadlines imposed either by the Court or by the

3  local rules, the Court will not strike the additional pleadings

4  filed by Debtor after December 9, 2011 relating to the Motion to

5  Reconsider.  Trustee's request to strike those pleadings is denied.

6

7                          IV.

8                   CONCLUSION

9    For the reasons stated above, the Court denies the Motion to

10  Reconsider, the Motion to Compel, and the Contempt Motion.  The

11  Court also denies Trustee's request to strike the additional

12  pleadings filed by Debtor after December 9, 2011 relating to the

13  Motion to Reconsider.  Counsel for Trustee shall submit a form of

14  order after service on Debtor.

15

16  Dated:    2/6/12       _Arthur S. Weissbrodt_

17                      ARTHUR S. WEISSBRODT

                         UNITED STATES BANKRUPTCY JUDGE

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM DECISION    24

                              Court Service List

Jacqueline C. Melcher
P.O. Box 222798
Carmel, CA 93922

John W. Richardson
Chapter 7 Panel Trustee
5161 Soquel Dr. #F
Soquel, CA 95073

Charles P. Maher, Esq.
Luce, Forward, Hamilton and Scripps
121 Spear St. #200
San Francisco, CA 94105

Lance N. Jurich, Esq.
Law Offices of Loeb and Loeb
10100 Santa Monica Blvd. #2200
Los Angeles, CA 90067-4164

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California