Attachment A

The Court has considered the Trustee's Application to Appoint an Appraiser ("Application"), Debtor's Opposition to the Application and Trustee's reply.

Normally, this would be a standard application and would be granted without further inquiry. However, given the amount of real estate in this Estate, the Court wonders why an appraisal of Debtor's personal property should occur at this juncture. Nevertheless, if the Trustee in his judgment decides to have the property appraised, he may do that.

The Court is also aware that Mr. Schmitz has been conducting appraisals for bankruptcy estates for many years. However, given the sensitive issue of Debtor renting out part of her house to other people, whose personal property is not Estate property, the Trustee shall personally accompany Mr. Schmidt during his appraisal of any property currently occupied by the Debtor and partially rented out to tenants -- for the full time the appraiser is in that property.

*It is so ordered.*

APW

2/12/09

BARTLETT, LEADER-PICONE & YOUNG, LLP
MALCOLM LEADER-PICONE (State Bar No. 104620)
KAIPO K.B. YOUNG (State Bar No. 164718)
2201 BROADWAY, SUITE 803
OAKLAND, CA 94612
TELEPHONE: (510) 444-2404
FACSIMILE: (510) 444-1291

Attorneys for Debtor
JACQUELINE C. MELCHER aka
JACQUELINE CARLIN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSÉ DIVISION

| | |
|---|---|
| In re | No. 01-53251 |
| JACQUELINE C. MELCHER aka JACQUELINE CARLIN, | Chapter 11 |
| Debtor. | **DECLARATION OF MALCOLM LEADER-PICONE IN OPPOSITION TO TRUSTEE'S MOTION FOR ORDER UNDER 11 U.S.C. § 521.** |
| | Date: January 27, 2009 |
| | Time: 2:15 p.m. United States Bankruptcy Court 280 South First Street, Room 3020 San Jose, CA |
| | **HONORABLE ARTHUR S. WEISSBRODT** |

### DECLARATION OF MALCOLM LEADER-PICONE

I, Malcolm Leader-Picone, declare:

1. I am an attorney at law, licensed to practice before this Court, and former counsel for the debtor herein. I have personal knowledge of the matters stated herein and, if sworn, could and would testify competently thereto.

2. I have read the declaration of the trustee's counsel, Mr. Maher, and must take

DECL. OF MALCOLM LEADER-PICONE re PROBATE APPEAL     Case No. 01-53251
-1-

issue with numerous statements therein. Generally, I must state that Mr. Maher in his attitude and conduct towards the debtor has been incredibly impatient, insensitive and obstinate. From my vantage point, Mr. Maher took an immediate personal dislike to the debtor, and has taken personal offense from the fact that the debtor has challenged his decisions and actions in this case; even though the debtor is simply fighting without legal training to preserve the real estate holdings that she acquired prior to the dissolution of her marriage to Terrence Melcher.

3. One of the first "fights" that Mr. Maher had with the debtor concerned the appeal pending in the probate case in the Second District Court of Appeal. Mr. Maher determined to dismiss the appeal, without notice, and refused to consider abandoning it to the debtor. After Ms. Melcher brought this issue to the Court's attention during the motion of my firm to withdraw as counsel on October 10, 2009, the Court instructed Ms. Dumas, counsel to the U.S. Trustee, to contact Mr. Maher and express the Court's concern that he would abandon a case without notice. I subsequently spoke to Mr. Maher on October 18, 2008 and he confirmed that Ms. Dumas had spoken to him about the matter, but that he had not changed his view and would dismiss the probate appeal without notice. As a consequence of that obstinate position, the debtor was forced to bring an emergency motion with respect to the probate appeal. Only then did Mr. Maher agree to the abandonment of the appeal to the debtor.[1]

4. As reported in the Declaration of Mr. Maher at paragraph 9, I participated in a conference call on September 26, 2008 with Mr. Maher, the trustee, the debtor, and my partner, Mr. Young. While it is true that Mr. Maher requested copies of whatever files my office had with respect to the debtor's lawsuits in the Los Angeles Superior Court (the probate case and the Family Code section 2120 action), he did not discuss any expectation of preparing a brief in the probate appeal. To

---

[1] Mr. Maher will not doubt point out the irony in this situation; which is that the debtor defaulted in the appeal and the appeal was dismissed for failure of the debtor to timely file the opening brief. No longer representing the debtor I have no idea of the reason for that default, but California law in Code of Civil Procedure section 473 may provide the debtor with a vehicle to seek reinstatement of the appeal, if she had good cause (mistake, inadvertence, excusable neglect) for missing the filing deadline. See, *Sanders v. Warden* (1951)106 Cal.App.2d 707, 708 ["After an appeal has been dismissed by the court it may be reinstated only by the court (1) for good cause shown by affidavit, and (2) after notice to the opposite party, pursuant to the provisions of section 473 of the Code of Civil Procedure."]

DECL. OF MALCOLM LEADER-PICONE re PROBATE APPEAL    Case No. 01-53251
-2-

DECL. OF MALCOLM LEADER-PICONE re PROBATE APPEAL

\\BL-PSERVER2\BL-P FILES\CLIENT FILES\M TO O\MELCHER\BANKRUPTCY\MOTIONS\TRUSTEE'S MOTIONS\COMPEL COMPLIANCE\DECL ML-P OPP COMPLIANCE 011309 MLP.DOC

the contrary, Mr. Maher informed us that, in his opinion, the probate action was duplicative of other pending proceedings and that he expected to recommend to the trustee that the appeal be dismissed. Mr. Maher rejected my request that the trustee immediately seek a continuance of the filing date of the opening brief on the grounds that the trustee had just been appointed and needed time to review the file in the appeal.

5. During the conference call, there was discussion of the fact that the trustee had retained Mark Lanza as his counsel in the Wedding Litigation then pending on Martha's Vineyard. Ms. Melcher expressed her dismay that the trustee had taken the trial in that matter off calendar, because it had taken a year to get the matter set for trial and could take another year before it was back on calendar for trial. There was discussion of the fact that the debtor could not longer contact her prior counsel, Mr. Lanza, about the Wedding Litigation, because Mr. Lanza now represented the trustee.

6. On the subject of the weddings dispute on Martha's Vineyard, Mr. Maher expressed his opinion that Ms. Melcher had invited the controversy because she expressly advertised her properties for rental for the purpose of weddings. Mr. Maher stated that he would not have mentioned weddings on the debtor's website advertising the properties. That way, it would have been entirely the tenants' idea to conduct a wedding during a rental of the property, and the debtor could not have then been accused of holding weddings in violation of a local ordinance. Mr. Maher then suggested that the debtor simply remove the references to weddings from her website.

7. During the conference call, I attempted to raise the issue of how the debtor should handle rentals of the property. Neither Mr. Maher nor the trustee wanted to discuss that issue, so nothing was resolved about it. Neither Mr. Maher nor the trustee instructed Ms. Melcher to cease her efforts to maintain and rent her properties. Neither Mr. Maher nor the trustee instructed the debtor to take down her website advertising her properties.

8. After the conference call, my office provided Mr. Maher with what little in the way of files that it had on the Los Angeles litigation, since we were not counsel of record for the debtor in those cases.

9. On Thursday, October 16, 2008, during a meeting with the debtor in my office,

DECL. OF MALCOLM LEADER-PICONE re PROBATE APPEAL
-3-
Case No. 01-53251

I telephoned Mr. Maher to discuss the issue of dismissal of the appeal. In addition to the probate appeal issue, I again asked Mr. Maher what Ms. Melcher should do about rentals. Mr. Maher told me that he would not get involved in that issue and that he would leave it to the trustee to work that our directly with the debtor. I reminded Mr. Maher that the rentals was Ms. Melcher's only source of livelihood and that she worked up to 16 hours a day trying to secure rentals for her properties and with dealing with expenses and repairs to the properties. I explained to Mr. Maher that no one could do a better job of renting the properties than the debtor and that the uncertainty was hurting the rentals. Mr. Maher said that he would attempt to set up a meeting between the debtor and the trustee to address the rental situation. Mr. Maher did not ask me to inform the debtor that she was to cease any further efforts to obtain rentals for her properties.

10. Both the debtor and her accountant and my office have cooperated to the best of our abilities with the trustee and his counsel. However, I know from my own correspondence, emails and phone calls with Mr. Maher in this case, that Mr. Maher has been continuously angry, belligerent, impatient and insensitive in his dealings with the debtor. Despite my inviting Mr. Maher to review the files that my office is holding from the debtor's prior counsel, or to arrange to have them shipped to him, Mr. Maher has made no effort to take control of those files, let alone to see them.

11. As to Mr. Maher's Exhibit C, the October 15th letter asking the debtor to, in essence, present Mr. Maher with a legal brief on the basis for the 2120 action, I made clear to Mr. Maher in a letter of October 28, 2008, attached hereto as Exhibit "A", and in telephone conversations and emails, that Mr. Maher was being unfair and unrealistic in his demands of the debtor. I told Mr. Maher then, and believe it still today, that Mr. Maher's letter of October 15th was a cynical attempt to set Ms. Melcher up for denunciation before this Court.

12. I believe that the debtor has cooperated with Mr. Maher and the trustee to the best of her ability. While I recognize that the debtor may not always seem the easiest person to deal with because of her passion for saving her life's work, I believe that the trustee and her counsel could have elicited much more value from their interactions with the debtor if they had simply shown her some patience and respect. I am very disturbed by this motion (and the pending motion to deny

DECL. OF MALCOLM LEADER-PICONE re PROBATE APPEAL
-4-
Case No. 01-53251

discharge). I have never known the debtor to act other than in good faith. The debtor is not a lawyer, and she is without counsel, and this trustee and trustee's counsel seem to be seeking to punish the debtor for having the temerity to question them. That is not right and is not fair. I urge the Court to deny the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: January 13, 2009.

/s/ *Malcolm Leader-Picone* (#104620)
MALCOLM LEADER-PICONE

# PROOF OF SERVICE BY EMAIL

I, Malcolm Leader-Picone, declare that:

I am employed in the County of Alameda, California. I am over the age of eighteen years and not a party to the within action. My business address is 2201 Broadway, Suite 803 Oakland, CA 94612. On January 13, 2009, I served the following document(s) entitled:

**DECLARATION OF MALCOLM LEADER-PICONE IN OPPOSITION TO TRUSTEE'S MOTION FOR ORDER UNDER 11 U.S.C. § 521.**

upon the following person(s) in said action by EMAIL, addressed as follows:

| | |
|---|---|
| Charles P. Maher, Esq.<br>Luce Forward Hamilton & Scripps LLP<br>121 Spear Street, Suite 200<br>San Francisco, CA 94105<br><br>Telephone: 415-356-4600<br>Direct: 415-356-4621<br>Facsimile: 415-356-4610<br>Email: cmaher@luce.com | Nanette Dumas, Esq.<br>Office of the United States Trustee<br>280 South First St., Rm. 268<br>San José, CA 95113<br><br>Telephone: 408-535-5525<br>Facsimile: 408-535-5532<br>Email: nanette.dumas@usdoj.gov |
| Honorable Arthur S. Weissbrodt<br>United States Bankruptcy Judge<br>Northern District of California<br>280 S. First Street, Room 3035<br>San José, CA 95113<br><br>Telephone: 408-535-5116<br>Facsimile: 408-535-5124<br>Courtroom Deputy: Tanya Bracegirdle<br>408-535-5001<br>Electronic Record: Jackie Jarvis:<br>408-535-5003<br>Tanya_Bracegirdle@CANB.USCourts.Gov | Jacqueline C. Melcher<br>P. O. Box 222798<br>Carmel, CA 93922<br><br>Telephone: 831-624-6312<br>Facsimile: 831-624-2418<br>Email: jjjacqueline@redshift.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Oakland, California, on January 13, 2009.

/s/ Malcolm Leader-Picone

PROOF OF SERVICE

Jacqueline C. Melcher
PO Box 222798
Carmel, California 93922
Phone: 831-624-6312
Fax:    831-624-2418

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

Jacqueline C. Melcher        Case 01-53251 ASW
Debtor                       Chapter 7

## RESPONSE TO MOTION TO COMPEL
## COUNTER MOTION TO COMPEL

## THE RENTING OF THE FAMILY HOME IS USED TO SUPPORT AND PROTECT THE PROPERTY

1. Attorney Maher for the trustee has used the title of trustee to put every obstacle in my path to obstruct my ability to pay the mortgage and to use every tactic to try and make it impossible for me to retain ownership of my home.
2. A few years ago attorney Maher stated; "The trustee can sell the residence even if it does not need to be sold".
3. Attorney Maher and his trustee dropped the value of the Stonewall property by $3 million dollars in one day which creatively concocting a $550,000 thousand dollar short fall in my estate therefore we have to sell the family residence.

Maher did not reject lease
1. Maher & trustee knew I rented portions of my home to pay mortgage since the 10/10/08 BK hearing when Judge stated I would be the best person to manage the rentals.
2. Maher knew because his trustee was involved with the renting of part of the family home as seen in Richardson's emails to me re the family home tenants.

3. Everyone knew from MLP's declaration clarifying for the Court that I was only to remove weddings from my web site – not take down my web site.
4. In MLP's declaration re Maher accusing me of losing $500,000 thousand dollars for the BK estate when I turned down an offer on the next door property. There was no such offer.
5. I have provided Barry Milgrom with my Wells Fargo payments and rental payments 11/23/10.
6. In Judge Weissbrodt's Order appointing appraiser – docket # 1920 dated 2/16/09 which state on Attachment "A" the following;
Order appointing appraiser date 2/12/09 states on attachment "A" Normally, this would be a standard application and would be granted without further inquiry. However, given the amount of real estate in this Estate, the Court wonders shy an appraisal of Debtor's personal property should occur at this juncture. Nevertheless, if the Trustee in his judgment decides to have the property appraised, he may do that.
The Court is also aware that Mr. Schmitz has been conducting appraisals for bankruptcy estates for many years. However, given the sensitive issue of Debtor renting out part of her house to other people, whose personal property is not Estate property, the trustee shall personally accompany Mr. Schmidt during his appraisal of any property currently occupied by the Debtor and partially rented out to tenants – for the full time the appraiser is in that property."

Only after several years did attorney Maher request his trustee to sign a declaration that my tenant's lease was "unauthorized". This is perjury with the trustee defrauding the Court. Why would the trustee wait for four years after he was appointed to sign a declaration falsely stating that my tenant was "unauthorized"?

The trustee's new claim that the tenant is unauthorized is estopped because the trustee instructed me to obtain a long term tenants. I changed my position of taking short term tenants in reliance on the trustee's instructions to me to take longer term rentals. The trustee should be equitably estopped from using his "late in the day" changed position at the request of his attorney C. Maher. Mr. Maher drew up a declaration for his trustee John Richardson's signature while Mr. Richardson was in the state of Utah. The declaration is attached as EXHIBIT….

4.

It was the trustee and attorney Maher who allowed Cohen and Soros a pass on the multi million dollar stealing of the Stonewall property deeded easement appraised by certified appraiser Kevin Spellman between $2.6 and $6 million dollars depending on the finished product sitting on top of my easement. All litigation proving my easement was concluded. The trustee only had to ask for damages in the millions of dollars for the taking. As stated my Chapter 11 attorney M. Leader-Picone in his October 28, 2008 letter to attorney Maher – " An issue that has not been introduced into the Cohen proceedings, that needs to be seriously considered, is the complicity of Soros in the entire Cohen course of action. If, as we firmly believe, Soros was behind the entire taking of the easement, and that the house was built by Cohen to Soros' specifications, then Soros should be named as a co-conspirator or as jointly and severally liable for the violation of stay.

With respect to the questions raised in your letter of October 23rd, (1) the adversary proceeding is moot, if you choose to leave it as it is, rather than my suggestion to amend it; (2) under no circumstances will any ruling of the Land Court moot the 362(h) claim against Cohen et al. As noted above, I think you have an obligation to bring Mr.Soros into the 362(h) claim, because he acted in concert with Mr. Cohen to violate the automatic stay, and because he is now owner of the property that continues to violate the automatic stay. My view is that state court has its concerns with the Cohen/Soros conduct and the Bankruptcy Court has entirely different concerns. Although the Land Court could minimize what it considers the impact of the building upon the easement, the Bankruptcy Court should come down on Cohen/Soros as heavily as it can under 362(h) for their willful violation of the automatic stay. In other words, just because the Land Court may not think that Cohen acted in an egregious manner, that does not mean that the Bankruptcy Court will not think that Cohen and Soros acted egregiously in deliberately building on the debtor's easement after warning from the Bankruptcy Court. If the trustee is going to claim ownership of the 362(h) claim, then the debtor expects the trustee to vigorously litigate that claim and recover damages, including punitive damages for the estate." **Exhibit. 10/28/08 letter to attorney Maher.**

5. The hearing on my claims against the trustee and his attorney was scheduled for March 22, 2012. This Court strongly suggested mediation at this hearing and took my objections and claims against the trustee off calendar and stated I could re-schedule my objections if needed after mediation. I set mediation dates with Heidi Adams for Judge Goldberg and attorney Maher cancelled the dates each time I set a date. It was clear to me Mr. Maher had no intention of settlement.

6. Most recently Mr. Maher has stated that I am taking property of the Bankruptcy estate even if I use the rents to pay the Wells Fargo mortgage! Mr. Maher seems to always find another way to set me up as doing something wrong.
7. Attorney Maher has used repeated Motions to Compel me to turn over property of the Bankruptcy estate in retaliation for my Court filings begining with attorney M. Leader-Picone and my objections to realtor Rooney and his additional 2% commission over and above his previous commission in the fall of 2008. Attorney Maher's public accusations in his motions are used to discredit and slander me to the Court and to the Public.
8. On November 21, 2012 I filed a motion to remove the trustee and set the hearing for December 19, 2012. On January 4, 2013 the trustee filed a "counter motion" for an order compelling turn over of property of the estate and an opposition to debtor's motion to remove.

**THERE IS A LONG HISTORY OF THE TRUSTEE AND HIS ATTORNEY'S EFFORTS TO FABRICATE REASONS TO SELL THE FAMILY HOME TO "TAKE IT ALL"**

1. Attorney Maher in a Court filed document falsely accused me of turning down an offer on the next door property in Carmel causing a $500,000 hundred thousand dollar loss for the estate therefore Mr. Maher asked the Court to sell my home. Attorney M. Leader- Picone wrote a declaration in opposition to attorney Maher's false statement. There was no such offer.
2. During the Bankruptcy compromise hearing on March 1, 2011 this Court stated I was due a salary for working and renting the properties during my Chapter 11 Case as stated in Chapter 11 attorney M. Leader-Pcione's document.... In response attorney Maher yelled out in Court; "she stole $500,000 thousand dollars"! This random absurd unsupported statement was all that was needed for the Court to drop the subject. Mr. Maher did not want any funds

coming to me that might lead to having funds to have an attorney to protect my life's work.

coming to me that might lead to having funds to have an attorney to protect my life's work.

*This document never completed July 2013*
*Jacqueline Melcher*

## PROOF OF SERVICE

I am having a third party serve via email; "Signed copy of Motion to continue October 4, 2013 hearings" because of lack of signature and "Order authorizing the continuance of the two October 4, 2013 court hearings on the trustee's motion to compel and the debtor's claims against the trustee and his attorney" to the following persons on September 27, 2013:

Michael Isaacs

Charles Maher

County legal process server

Jacqueline Melcher
*Jacqueline Melcher*